J-S39009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                     :              PENNSYLVANIA
                                     :

          v.                             :
                                     :
                                   :

GEORGE WESTBROOK             :
                                   :

          Appellant           :    No. 953 EDA 2024

Appeal from the PCRA Order Entered February 26, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-0012208-2014

BEFORE:  STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:               **FILED JUNE 30, 2026**

      Appellant, George Westbrook, appeals from an order denying his petition for relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.  Appellant argues that trial counsel was ineffective for failing to move to suppress cell phone records obtained through two search warrants and for failing to object to admission of these records on grounds of hearsay and lack of authenticity.  We affirm.

      The record reflects that in the early morning hours of May 1, 2014, the victim Andrew Keeys, was active on Talkee, a phone chat line, looking to meet someone for a possible sexual encounter.  Appellant responded to a voice message that Keeys had published, and they exchanged voice messages.  Keeys gave Appellant his cell phone number and the two began texting.  After agreeing to meet one another, Keeys provided Appellant with his address.  Appellant was supposed to arrive within 20 minutes.  After 45 minutes to an

hour passed, Keeys grew frustrated. He sent a number of messages to Appellant; in one, he called Appellant an "asshole." Shortly thereafter, Appellant arrived at Keeys' apartment.

Keeys let Appellant inside. They sat on a couch and engaged in casual conversation. Appellant then began reading the text messages that Keeys had sent him. Keeys apologized for using a profanity, explaining that he thought he had been stood up. Appellant appeared upset and had a "blank" expression on his face. The two returned to the topic of sex. Appellant expressed that he wanted to receive oral sex. Keeys was not interested, so he responded with "I don't think so." Appellant stood up, reached around his waistband, and withdrew a firearm. Appellant accused Keeys of "antagonizing" him and asked, "[w]hat if I popped you right now?" Keeys immediately apologized for offending Appellant and asked him to calm down.

Appellant ordered Keeys to lie on the floor. A brief scuffle ensued, during which Keeys attempted to prevent Appellant from raising his gun. Appellant pulled away, aimed the gun at Keeys, and shot him in the left chest. Keeys stumbled back but was able to run from the room. He fled his apartment and flagged down a pedestrian, asking him to call an ambulance. When police responded, Keeys provided them with a description of his assailant. Later, while Keeys was hospitalized, he provided detectives with the phone number that Appellant had used to arrange their meeting.

After learning that the number was serviced by T-Mobile, Detective Wayne Brown prepared a search warrant for user records associated with the

number. The warrant, Search Warrant 181966, listed the location to be searched as "Phone number 215-xxx-xxxx[1] T-Mobile who is currently doing business in Philadelphia." The warrant further listed the name of the owner, occupant or possessor of the premises to be searched as "T-Mobile 4 Sylvan Way Parsippany, NJ 07054." Records received in response to the warrant revealed that the phone number belonged to a pre-paid cell phone. Unfortunately, the records did not include a name for the subscriber.

Without a suspect, the case soon went cold. This left Keys feeling unsafe, so a few months later, he typed the assailant's phone number into a Facebook search. The search returned a profile with the name of Avon G. Sales, but the Facebook URL of the account was "george.westbrook.71." When Keys looked at the account's photos, Keys immediately recognized Appellant. Keys informed the police about his discovery. When a detective gave Keys a photo array, Keys identified Appellant as his attacker. Detective Brown then prepared a second warrant, Search Warrant 187710, for additional T-Mobile records. This warrant identified the location to be searched as "T-Mobile cell phone #215-xxx-xxxx" and listed the owner of the premises as "George Westbrook (T-Mobile)."

On May 17, 2016, Appellant proceeded to a jury trial. Keys testified at trial and identified Appellant as the man who came to his apartment and shot him. The Commonwealth also presented the testimony of Special Agent

_____

[1] Identifying numbers have been and will be redacted throughout this memorandum.

William Shute, who was qualified as an expert in cell tower analysis and testified regarding a historical cell site analysis he conducted from Appellant's phone records. This analysis revealed that Appellant's phone was near Keys' apartment at the time of the shooting. Additionally, Appellant's T-Mobile account records were introduced. Detective Brown explained the scope of subscriber records sought under the two search warrants he prepared and testified that T-Mobile provided him with these records in response to those warrants. The records also included a cover sheet from a T-Mobile representative stating that the records were being provided in response to Detective Brown's warrants. Finally, Glen Nelson, a community services provider who had worked with Appellant since 2012, testified that Appellant had communicated with him using the same number that was used to arrange the meeting with Keys.

On May 20, 2016, a jury convicted Appellant of aggravated assault and possessing instruments of crime. After a bifurcated trial, the court convicted Appellant of possession of a firearm by prohibited persons. The court sentenced Appellant to an aggregate term of 12½ to 25 years of incarceration. On March 23, 2018, this Court affirmed Appellant's judgments of sentence on direct appeal. Appellant did not seek review in the Pennsylvania Supreme Court.

On March 19, 2019, Appellant filed a *pro se* PCRA petition. Counsel was appointed and filed an amended petition, claiming, *inter alia*, that trial counsel was ineffective for: (i) not filing a motion to suppress arguing that the T-

Mobile search warrants were facially defective and void; and (ii) not objecting to the admissibility of the T-Mobile records at trial as inadmissible hearsay and insufficiently authenticated. On February 15, 2022, the PCRA court issued a notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. On February 26, 2024, the PCRA court dismissed the petition. Appellant filed a timely appeal to this Court.

On August 27, 2024, the PCRA court ordered Appellant to file a concise statement of matters complained of on appeal within the next 21 days. On March 20, 2025, almost seven months later, Appellant filed his concise statement in which he raised three issues:

**(1)** whether trial counsel was ineffective for failing to file a motion to suppress Appellant's T-Mobile phone records due to defective search warrants;

**(2)** whether trial counsel was ineffective for failing to object to the admissibility of the phone records on grounds of hearsay and lack of authenticity; and

**(3)** whether trial counsel was ineffective for failing to object to the admissibility of out-of-state cell phone records that were obtained with a Philadelphia search warrant.[2]

_____

[2] Appellant has waived issue (3) in his concise statement by failing to brief it in this appeal. *See Commonwealth v. Hudson-Greenly*, 247 A.3d 21, 23 n.2 (Pa. Super. 2021) (claim raised in concise statement but not developed in appellate brief is waived).

On April 2, 2025, the PCRA court filed an opinion that addressed issue (1) in Appellant's concise statement. On April 2, 2026, this Court remanded the case to the PCRA court for preparation of a supplemental opinion on issue (2). On May 8, 2026, the PCRA court filed a supplemental opinion concerning this issue.

Preliminarily, we address whether Appellant's counsel's failure to file a timely concise statement constitutes a waiver of issues (1) and (2). "This Court has held that both the complete failure to file the 1925(b) statement … and the untimely filing of a 1925(b) statement is *per se* ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal." ***Commonwealth v. Sanchez-Frometa***, 256 A.3d 440, 442-43 (Pa. Super. 2021). "While these circumstances often require a remand, where the trial court addresses the issues raised in an untimely Rule 1925(b) statement, we need not remand but may address the issues on their merits." ***Id.*** at 443. Here, Appellant's counsel was *per se* ineffective for failing to file a timely concise statement. Nevertheless, since the PCRA court has now filed opinions addressing issues (1) and (2) in Appellant's untimely Rule 1925(b) statement, and since both issues have been briefed, we decline to find them waived. ***Id.***

The two issues raised in this appeal are as follows:

Whether the PCRA Court erred and abused its discretion when it dismissed [Appellant's] PCRA Petition where Trial Counsel, Joseph McPeak, was ineffective, because Trial Counsel failed to file a Motion to Suppress Evidence seized as a result of Search Warrants

181966 and 187710, because said Search Warrants were facially defective and thus void?

Whether the PCRA Court erred and abused its discretion when it dismissed [Appellant's] PCRA Petition where Trial Counsel, Joseph McPeak, was ineffective, because Trial Counsel failed to object to the admissibility of T-Mobile telephone records as being inadmissible hearsay and as being insufficiently authenticated?

Appellant's Brief at 10.

In reviewing the denial of PCRA relief, this Court examines whether the PCRA court's determinations are supported by the record and free from legal error. ***Commonwealth v. Diaz***, 183 A.3d 417, 421 (Pa. Super. 2018). The reviewing court is not bound by the PCRA court's rationale for dismissing the petition and may affirm for any reason supported by the record. ***Id.*** The law presumes that counsel was effective, and a petitioner claiming ineffectiveness bears the burden of proving otherwise. ***Commonwealth v. Orlando***, 156 A.3d 1274, 1281 (Pa. Super. 2017). To overcome this presumption, a petitioner must plead and prove by a preponderance of the evidence that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. ***Id.*** Our Supreme Court has explained that:

A chosen strategy will not be found to have lacked a reasonable basis unless it is proven that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability, but for

- 7 -

counsel's error, the outcome of the proceedings would have been different.

*Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009). If a petitioner fails to satisfy any one of the three prongs, the claim fails. *Orlando*, 156 A.3d at 1281.

Appellant first claims that trial counsel was ineffective for not moving to suppress the T-Mobile records on the basis that the search warrants did not list a specific Philadelphia address to be searched. This claim lacks arguable merit.

Generally, a valid search warrant must "state the name or describe with particularity the person or place to be searched." *Commonwealth v. Washington*, 858 A.2d 1255, 1258 (Pa. Super. 2004) (citing Pa.R.Crim.P. 206). However, warrants must "be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." *Id.* As the United States Supreme Court has stated, "[a] grudging or negative attitude by reviewing courts toward warrants … is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant[.]" *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *see also Washington*, 858 A.2d at 1258 (an unreasonable interpretation of the particularity requirement "would elevate form over substance").

Here, Detective Brown sought subscriber records regarding a specific T-Mobile cell phone number. He had no reason to believe that these records would be located at only one physical address, or that they were even stored

in physical form at any single T-Mobile property. Given the nature of records storage in 2015—particularly for a national corporation serving countless customers such as T-Mobile—it stands to reason that the records could have been obtainable from any number of storage locations, physical or not. Thus, read in a common-sense manner, the search warrants were not invalid simply because they did not list a specific physical address to be searched.[3] Nor does Appellant cite any authority creating a bright-line rule that every search warrant must always specify a physical address to be searched to be valid. To the contrary, we have explained that a search warrant can authorize the search "of physical or digital spaces[.]" **Commonwealth v. Young**, 287 A.3d 907, 921 (Pa. Super. 2022).

Even assuming *arguendo* that this issue had arguable merit, Appellant cannot prove prejudice. The phone records were merely cumulative of other evidence that proved Appellant was the perpetrator. Keys, the victim, provided direct evidence through his testimony that Appellant shot him. Keys not only identified Appellant at trial but also identified him in a photo array months before trial. The Facebook profile bearing Appellant's photographs provides further evidence that he was the assailant. The Facebook account had a unique URL of "george.westbrook.71" and was

_____

[3] We also note that one of the warrants (Search Warrant 181966) did identify a physical address: a T-Mobile corporate office located at 4 Sylvan Way, Parsippany, NJ 07054.

associated with the phone number that Appellant used to communicate with Keeys on the day of the assault. Finally, Nelson's testimony established that Appellant used the same phone number to communicate with him that Appellant used to communicate with Keeys. Since all of this evidence was independent of the phone records, Appellant's conviction did not rise or fall on the admission of these records. The records were merely cumulative of other evidence that firmly established Appellant's guilt. There is no reasonable probability that the verdict would have been different had the records not been admitted. Thus, the PCRA court properly denied relief on Appellant's first issue.

Next, Appellant argues that trial counsel was ineffective for failing to object to admission of the cell phone records on grounds of hearsay and lack of authenticity. The PCRA court determined that Appellant's argument fails because Appellant cannot demonstrate prejudice. The court reasoned:

> Agent [William] Shute was qualified as an expert in historical cell tower analysis at [Appellant]'s trial. *See* N.T., 05/19/2016, at 3-52. He opined that, after analyzing the data in the call detail records contained within the T-Mobile telephone records at issue, he discovered [Appellant]'s mobile phone number was near Mr. Keeys' residence around the time Mr. Keeys was shot. *See id.*, at 53-74, especially 64-73.
>
> Agent Shute's expert testimony was permissible apart from whether the telephone records he reviewed were admitted into evidence because experts in historical cell tower analysis utilize call detail records to form an opinion about the geographical area of where a person's mobile telephone is located when a call is made. See Pa.R.E. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would

reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."); Pa.R.E. 705 and Comment (explaining otherwise inadmissible facts and data supporting an expert opinion are considered only to explain basis for expert's opinion, not as substantive evidence); and N.T., 05/19/2016, at 39-49 (Agent Shute's testimony concerning the role of call detail records in criminal investigations); *see*, ***Commonwealth v. Aumick***, 297 A.3d 770, 777 (Pa. Super. 2023) (noting SOAB expert opinion falls within the general rules regarding expert witnesses and "the facts or data consulted need not be admissible for the expert's opinion to be admitted") (citing Commonwealth v. Prendes, 97 A.3d 337, 360 (Pa. Super. 2014) (explaining evidentiary rules permit experts to rely on hearsay evidence, provided it is of a type typically relied on by experts in the relevant field), impliedly overruled on other grounds by ***Commonwealth v. Hvizda***, 116 A.3d 1103 (Pa. 2015)). On the other hand, Agent Shute's expert opinion at trial, which was rendered to a reasonable degree of professional certainty (see N.T., 05/19/2016, at 74:15-18), "is, itself, substantive evidence." ***Aumick***, 297 A.3d at 782 (citation omitted).

Further, Mr. Keeys testified unequivocally at trial that [Appellant] was the person who shot him. See N.T., 05/18/2016, at 68-70. That testimony alone prevents [Appellant] from establishing a reasonable probability that the result of his trial would have been different had his trial counsel objected to admissibility of the T-Mobile telephone records on inadmissible hearsay and/or insufficient authentication grounds.

Supplemental Opinion, 5/8/26, at 3-4 (cleaned up).

We agree with this reasoning and conclude that Appellant's second argument fails due to his inability to demonstrate prejudice.

For these reasons, we affirm the PCRA court's order denying Appellant relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>6/30/2026</u>